FILED by KS  D.C.

Nov 16, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**21-20560-CR-BLOOM/OTAZO-REYES**

Case No._____

18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

**OSVALDO RICARDO,**

      **Defendant.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.    The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2

2.	Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

3.	Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound. Payments for home health care medical services were typically made directly to a Medicare-certified HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries.

4.	CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto"). As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data. CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor. SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

## Part A Coverage and Regulations

### Reimbursements

5. The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits. A patient qualified for home health benefits only if the patient:

(a) was confined to the home, also referred to as homebound;

(b) was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("POC"); and

(c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy.

### Record Keeping Requirements

6. Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of the patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

7. Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were: (i) a POC that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety

measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

8. Additionally, Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, or home health aide to a patient. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition. The home health aide was required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "skilled nursing progress notes" and "home health aide notes/observations."

### The Defendant, Relevant Entities, and a Related Individual

9. Defendant **OSVALDO RICARDO** was a resident of Miami-Dade County, Florida, the beneficial owner of House Call Health Agency Corp., and the sole officer and registered agent of Parker Center Corp.

10. House Call Home Health Agency Corp. ("House Call") was a Florida corporation, located at 11055 SW 186 Street, Suite 104, Cutler Bay, Florida, that did business in Miami-Dade County. House Call purported to provide, among other things, physical therapy and related medical services to Medicare beneficiaries.

11.     Parker Center Corp. ("Parker Center") was a Florida corporation, located at 7821 Coral Way, Suite 127A, Miami, Florida, that purported to provide, among other things, physical therapy.

12.     Individual 1 was a resident of Miami-Dade County, Florida.

## COUNT 1
### Conspiracy to Defraud the United States and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around June 2018, through in or around at least December 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**OSVALDO RICARDO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with Individual 1 and with others known and unknown to the Grand Jury,

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, in violation of Title 18, United States Code, Section 371; and

b.      to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under

5

a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by: (a) offering and paying kickbacks and bribes in return for referring Medicare beneficiaries to House Call to serve as patients; (b) offering and paying kickbacks to Medicare beneficiaries to serve as patients at House Call, regardless of whether the beneficiaries needed or received home health services; (c) submitting and causing the submission of claims to Medicare for physical therapy and related medical services that House Call purportedly provided to Medicare beneficiaries; (d) causing Medicare to make payments to House Call as a result of such claims; (e) concealing the payment and receipt of the kickbacks; and (f) diverting the proceeds for the defendant and his co-conspirators' personal use, the use and benefit of others, and to further the conspiracy.

### Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. **OSVALDO RICARDO** and his co-conspirators concealed **RICARDO**'s ownership interest in House Call from Medicare.

5. **OSVALDO RICARDO** offered and paid kickbacks to Individual 1 in return for referring Medicare beneficiaries to House Call. In turn, Individual 1 paid kickbacks to the recruited Medicare beneficiaries.

6. **OSVALDO RICARDO** and co-conspirators caused House Call to submit claims to Medicare for physical therapy and related medical services purportedly provided to the recruited Medicare beneficiaries.

7.  **OSVALDO RICARDO** and co-conspirators caused Medicare to pay House Call based upon the physical therapy and related medical services purportedly provided to the recruited Medicare beneficiaries.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.  On or about October 23, 2019, **OSVALDO RICARDO** cashed House Call check number 1441 in the approximate amount of $1,840 drawn on Regions Bank account ending 9674 and made payable to Parker Center.

2.  On or about October 25, 2019, **OSVALDO RICARDO** paid Individual 1 $1,800 in cash as a kickback for referring a Medicare beneficiary to House Call.

3.  On or about October 31, 2019, **OSVALDO RICARDO** cashed House Call check number 1461 in the approximate amount of $4,920 drawn on Regions Bank account ending 9674 and made payable to Parker Center.

4.  On or about November 1, 2019, **OSVALDO RICARDO** paid Individual 1 $3,300 in cash as a kickback for referring a Medicare beneficiary to House Call.

5.  On or about November 4, 2019, **OSVALDO RICARDO** cashed House Call check number 1490 in the approximate amount of $1,854 drawn on Regions Bank account ending 9674 and made payable to Parker Center.

6.  On or about November 7, 2019, **OSVALDO RICARDO** paid Individual 1 $1,500 in cash as a kickback for referring a Medicare beneficiary to House Call.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-4
## Payment of Kickbacks in Connection with a Federal Health Care Program
## (42 U.S.C. § 1320a-7b(b)(2)(A))

1.    The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**OSVALDO RICARDO,**

did knowingly and willfully offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date of Kickback | Approximate Amount of Kickback |
|---|---|---|
| 2 | October 25, 2019 | $1,800 |
| 3 | November 1, 2019 | $3,300 |
| 4 | November 7, 2019 | $1,500 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## FORFEITURE
## (18 U.S.C. § 982)

1. The allegations of this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **OSVALDO RICARDO,** has an interest.

2. Upon conviction of any violation alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violations.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
FOREPERSON

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
TIMOTHY J. ABRAHAM
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | |
| OSVALDO RICARDO, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| | Superseding Case Information: |
| _____Defendant._____/ | |

**Court Division:** (Select One)        New defendant(s)   ☐ Yes   ☐ No
☑ Miami   ☐ Key West   ☐ FTL     Number of new defendants  _____
☐ WPB   ☐ FTP                    Total number of counts    _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **Yes**
   List language and/or dialect **Spanish**

4. This case will take **3** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I     0 to 5 days        ☑         Petty          ☐
   II    6 to 10 days       ☐         Minor          ☐
   III   11 to 20 days      ☐         Misdemeanor    ☐
   IV    21 to 60 days      ☐         Felony         ☑
   V     61 days and over   ☐

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_____
TIMOTHY J. ABRAHAM
Assistant United States Attorney
FLA Bar No.   114372

*Penalty Sheet(s) attached                                              REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** <u>OSVALDO RICARDO</u>

**Case No:** _____

Count #: 1

<u>Conspiracy to Defraud the United States and to Pay Health Care Kickbacks</u>

<u>Title 18, United States Code, Section 371</u>

**\*Max. Penalty:**   Five (5) Years' Imprisonment

Counts #: 2-4

<u>Payment of Kickbacks in Connection with a Federal Health Care Program</u>

<u>Title 42, United States Code, Section 1320a-7b(b)(2)(A)</u>

**\*Max. Penalty:**   Ten (10) Years' Imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**